UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN YOUNG,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 06-11821

District Judge Gerald E. Rosen
Magistrate Judge R. Steven Whalen

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff Karen Young brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Social Security Disability benefits. Before the Court are the parties' supplemental cross-motions for summary judgment [Docket #24, 25] which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). Consistent with my previous Report and Recommendation, I recommend that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on July 9, 1998, alleging disability as of January 17, 1997 (Tr. 67-69). On January 18, 2000,

Administrative Law Judge (ALJ) Alfred H. Varga found that Plaintiff was not disabled (Tr. 21). On January 22, 2003, the Appeals Council denied review (Tr. 5-6). On March 12, 2004, the Honorable Gerald E. Rosen remanded the case to the administrative level for further fact-finding on the basis that the ALJ provided insufficient reasons for rejecting Plaintiff's credibility (Tr. 364-372). ALJ Varga conducted a second hearing on May 10, 2005 in Oak Park, Michigan (Tr. 393-402). Plaintiff, represented by attorney Jane Ware, testified (Tr. 394-395), as did Vocational Expert (VE) Pauline Pegram (Tr. 395-402). On July 22, 2005, ALJ Varga found that Plaintiff was not disabled because although unable to perform any of her past relevant work, she retained the residual functional capacity ("RFC") to perform a significant range of sedentary work[1] (Tr. 20, 340). On February 14, 2006, the Appeals Council denied review (Tr. 327-328). Plaintiff filed suit in this Court on April 17, 2006.

On May 21, 2007, I filed a Report and Recommendation, concluding that Plaintiff's motion for summary judgment should be denied and Defendant's motion granted. On April 28, 2009, the Honorable Gerald E. Rosen ordered Plaintiff to obtain substitute counsel. *Docket #20.* On June 9, 2009, attorney Kenneth Laritz filed a motion for summary judgment on Plaintiff's behalf. *Docket #24.* On July 16, 2009, Defendant filed a supplemental cross motion for summary judgment. *Docket #25.*

---

[1]As indicated by Judge Rosen's remand order, the July 22, 2005, findings centered only on the ALJ's reasons for rejecting Plaintiff's credibility (Tr. 340). ALJ Varga indicated that the later opinion should be read as a supplement to the original January 18, 2000, finding that Plaintiff was capable of a significant number of unskilled sedentary jobs (Tr. 19-21, 336).

## **BACKGROUND FACTS**[2]

Plaintiff, born April 10, 1956, was 49 when the ALJ issued his July 22, 2005 decision (Tr. 67). She completed a master's degree and worked previously as a schoolteacher (Tr. 81). Plaintiff alleges disability due to Chronic Fatigue Syndrome ("CFS") (Tr. 77).

### A. Plaintiff's Testimony

#### 1. November 4, 1999 Hearing

Plaintiff, born April 10, 1956, testified that she worked formerly as a schoolteacher (Tr. 33). Plaintiff, reporting that she currently received long-term disability from her former employer, stated that before the onset of disability, she had worked continuously from 1978 to January 1997 (Tr. 33). She attributed her inability to work to fatigue, extremity pain, and memory problems (Tr. 34). She estimated that her condition required her to rest for one hour each day (Tr. 34). Plaintiff indicated that since first receiving a CFS diagnosis in 1996 from Dr. Clary, she sought treatment from Dr. Conley, a specialist in CFS (Tr. 35, 36).

Plaintiff testified that she typically arose at 10:30 to 11:00 a.m., took medication, then retired for approximately an hour or until her medication took effect (Tr. 35). She characterized the remainder of her day as spent performing various household tasks with intermittent rest periods (Tr. 35). She indicated that aside from slightly better memory skills, her condition had remained unchanged since ceasing work (Tr. 36). Plaintiff admitted that she continued to cook, clean, and shop, but added that her condition limited her to one

---

[2]The factual background set forth in this Court's May 21, 2007 Report and Recommendation is restated here.

activity per day (Tr. 37). She testified that she continued to golf "once every two weeks" (Tr. 37-38).

Plaintiff estimated that she could stand or walk for 20 to 30 minutes before experiencing fatigue, adding that she did not experience difficulty sitting except to the extent that fatigue required her to lie down for up to four hours each day (Tr. 38-40). She reported taking an antidepressant, pain medication, allergy medicine, and vitamins (Tr. 41).

### 2. May 10, 2005 Hearing

The transcript indicates that Plaintiff received CFS treatment from Dr. Clary for the symptoms of fatigue, memory problems, and pain (Tr. 394). Plaintiff also alleged digestive problems and recurrent yeast infections (Tr. 394). She indicated that she presently took Xanax as well as an increased dose of Zoloft (Tr. 395).

**B.     Medical Evidence**

### 1. Treating Sources

July 1993 notes by Edward J. Conley, D.O., indicate that Plaintiff experienced digestive problems and cramping (Tr. 168). In October 1995 Plaintiff reported extreme fatigue and a racing pulse (Tr. 167). January 1997 notes indicate that Plaintiff stopped working as a result of fatigue and memory problems (Tr. 166). Notes made later the same year report that Plaintiff's condition obliged her to discontinue a golf game at the 15th hole (Tr. 165). In October 1997, Plaintiff reported that she was able to perform light housework and yard work, make short trips to the store, and prepare meals (Tr. 164). February 1998 treating notes by Bethany Clary, M.D., indicate that Plaintiff reported continued muscle

aches (Tr. 127). The same year, Plaintiff reported taking a one-week vacation which included playing golf and attending shows (Tr. 146). A June 1998 stress test indicated that Plaintiff was "capable of carrying out light physical activity" (Tr. 209).

A "Chronic Fatigue Syndrome Residual Functional Capacity Questionnaire," postdated June 1999 by Dr. Conley, indicates that Plaintiff met the Center for Disease Control's ("CDC's") criteria for CFS (Tr. 253). Dr. Conley noted that Plaintiff experienced short term memory problems, joint pains, myalgia, and post-exertional malaise (Tr. 254). He opined that although Plaintiff was capable of low stress jobs, she experienced symptoms capable of creating frequent deficiencies in attention and concentration (Tr. 255, 259). Dr. Conley found additionally that Plaintiff was incapable of walking one block, but could sit for a total of four hours in an eight-hour work day with standing and walking limited to less than two hours (Tr. 255, 260). In addition to limitations in repetitive reaching, handling, or fingering, he estimated that Plaintiff would experience more than three "bad days" every month, opining that she was unable to work (Tr. 255, 256, 260).

In April 2005, Dr. Clary offered deposition testimony, stating that her care of Plaintiff consisted mainly of treating the symptoms of CFS with anti-inflammatories, sleeping pills, and anti-depressants (Tr. 382). Dr. Clary stated that Plaintiff met the CDC's guidelines for CFS, including short-term memory loss, muscle pain, joint pain, sleep disturbances, and post-exertional malaise (Tr. 383). Dr. Clary opined that Plaintiff was incapable of performing even unskilled sedentary jobs on a full time basis, adding that she found Plaintiff's claims of limitation credible (Tr. 384-385). Although conceding that she was not aware of

Plaintiff's recent activity level, she characterized Plaintiff's claim that she was too fatigued to prepare a meal as "reasonable" (Tr. 385).

### 2. Consultive and Non-Examining Sources

In July 1998, Plaintiff underwent an examination performed on behalf of her long-term disability insurance provider (Tr. 136-142). Plaintiff complained of muscle pain, memory loss, and "total fatigue," adding that taking a shower "would make her out of breath" (Tr. 136). Plaintiff stated that she currently took Zoloft (Tr. 136). John Lulkens, M.D., noted that she demonstrated good posture and was oriented to place, person and time (Tr. 140). Finding that Plaintiff showed "no evidence of a clinical psychiatric disorder," Dr. Lulkens assigned her a GAF of 80, but noted that Plaintiff's medical history reflected a GAF of 50³ (Tr. 141). A psychological summary from the same month concluded that Plaintiff experienced mild to moderate depression as a result of CFS (Tr. 135).

Notes from an October 1998 consultive examination state that Plaintiff reported fatigue, hand cramps, diarrhea, and headaches (Tr. 169). Wladimir Zarski, M.D., found Plaintiff "cooperative, pleasant, and well behaved," with a depressed mood (Tr. 170). He

---

³A GAF rating of 71-80 indicates that "[i]f symptoms are present, they are transient and expectable reactions to psycho-social stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR)* 34 (4th ed.2000). A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. *Id.*

assigned her a GAF of 64[4] (Tr. 171).  The same month, a Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff retained the capacity to lift 50 pounds occasionally and 25 frequently; sit, stand, or walk for six hours in an eight-hour work day; and push and pull without limitation (Tr. 112).  The report found the absence of postural, manipulative, visual, communicative, or environmental limitations (Tr. 115).  A Psychiatric Review Technique ("PTR") performed in November 1998 indicated the presence of depression (Tr. 122).  Plaintiff's functional limitations under the "B" criteria were deemed "slight," "seldom," or "non-existent" (Tr. 126).

In March 1999, a physical examination conducted by John L. Stoker, D.O., found that Plaintiff retained a "full range of motion of flexion, extension, side bending and rotation of the spinal column" (Tr. 234). The consultive physician noted further that Plaintiff exhibited "fine dexterity" of the hands (Tr. 235).

## C. Vocational Expert Testimony

### 1. November 4, 1999 Hearing

VE Pauline Pegram testified that if Plaintiff's alleged degree of limitation were fully credible she would be incapable of all gainful employment due to her need to lie down up

---

[4]GAF scores in the range of 61-70 indicate "some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 32 (*DSM-IV-TR* ), 30 (4th ed.2000).

to four hours each day, and her poor short term memory (Tr. 42-44).

> The ALJ then posed the following hypothetical question:
>
> "[A]ssume for the sake of this hypothetical that we have basically the same person, same age, sex, educational level, work experience, transferrable skills, if applicable. If I make a finding that a person with Miss Young's background could perform no more than a sedentary job exertionally, but that in addition to the job being sedentary, that it would afford the option of sitting or standing off and on, that it would be performed indoors in a relatively pollutant-free environment where there would be limitations on dust and fumes and atmospheric pollutants, that the jobs would not be performed at any unprotected heights, require any driving or climbing or work around dangerous or hazardous machinery, that the jobs would be relatively simple and routine in nature, maybe one, two, three steps in completion of the assigned tasks, and that they would be also low in stress. What kind of jobs would fall within the parameters of this hypothetical?

(Tr. 46). The VE testified that although the above limitations would preclude the use of transferrable skills from school teaching, the individual could perform approximately 4,000 clerical jobs (also including information clerks, lobby attendants, order takers, and telephone solicitors) existing in southeastern Michigan (Tr. 46). The VE found further that the same individual could perform 6,000 assembly, inspection, sorting, and packing jobs (Tr. 47). The VE classified all of the above jobs as unskilled at the sedentary level of exertion (Tr. 47).

### 2. May 10, 2005 Hearing

VE Pauline Pegram classified Plaintiff's past relevant work as a schoolteacher as "professional" at the light exertional level (Tr. 396). Pegram testified that Plaintiff's alleged need to rest frequently would preclude all work (Tr. 397-398).

ALJ Varga posed the following hypothetical question:

-8-

> "[A]ssume for the sake of this hypothetical that we have basically the same person, same age, sex, educational level and work experience. If I made a finding that a person with Ms. Young's background could or could have performed no greater than a sedentary or a sit-down type job, but that in addition to the job being sedentary it would afford the option of sitting or standing off and on, changing positions at will and continuing to perform the assigned tasks, jobs that would not be performed in any unprotected heights, require any driving or climbing or work around dangerous or hazardous machinery, as well as being very simple and routine in nature, not requiring more than a very few steps in the completion of the assigned tasks, jobs that would be very low in stress, have limited contact with the public, co-workers and with supervisors, and jobs that would also not require the constant and repetitive use of the hands in the performance of the assigned tasks. What kind of jobs, if any, would fall within the parameters of this hypothetical?"

(Tr. 398-399). Given the above limitations, the VE found that Plaintiff could perform the work of a systems monitor and telephone marketing clerk, testifying that 1,500 jobs existed in southeastern Michigan (Tr. 399). Given the same regional and vocational restrictions, the VE found the existence of 1,500 inspection and sorting task jobs (Tr. 399-400).

**D.    The ALJ's Decision**

   **1.  January 18, 2000**

Citing Plaintiff's medical records, ALJ Varga found that Plaintiff experienced the severe impairment of CFS, but did not experience an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 13, 19). The ALJ determined that although Plaintiff could not perform any of her past relevant work, she possessed the residual functional capacity ("RFC") to perform a significant range of sedentary work including:

> "The option to sit or stand off and on for six of eight hours. She requires relatively pollutant free environment, no working at heights, driving, climbing

or work around hazardous machinery; she requires simple and routine jobs with one to three step instructions, she requires low stress work "

(Tr. 20).   Adopting the VE's findings, the ALJ concluded that Plaintiff could perform the sedentary work of a assembler, sorter, packager, and inspector (Tr. 20).  The ALJ concluded that Plaintiff's testimony "not  entirely credible," pointing out that she continued to play golf bi-weekly and enjoyed extensive family and social support (Tr. 17).

### 2.  July 22, 2005

Limiting his findings primarily to the issues forming the basis for remand, the ALJ again rejected Plaintiff's allegations of disability   (Tr. 340).   He cited Dr. Lukens' observation that Plaintiff's memory appeared intact, further noting that subsequent to her January 1997 "disability," Plaintiff took a three-week vacation which included golfing and attending shows (Tr. 336-337).   He characterized Plaintiff's testimony as "self-serving and without objective medical basis or support in fact" (Tr. 339).

### STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and

"presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Credibility

Plaintiff argues that the ALJ's latest credibility determination was both procedurally and substantively flawed. *Plaintiff's Brief, Docket #24* at 9-26. Citing SSR 96-8p, she submits first that her admitted ability to perform a variety of activities "does not equate to an ability to perform work in a competitive work setting." *Plaintiff's Brief* at 11-12. She argues secondly that the ALJ erroneously found that Dr. Clary's deposition testimony contradicted her allegations of disability, *id.* at 12-13 (*citing* Tr. 386), contending on a related note that the ALJ's conclusion that she was "feeling better," amounts to a misreading of Dr. Conley's treating notes. *Id.* at 15-16 (*citing* Tr. 155, 336). Plaintiff cites *Cohen v. Secretary of HHS,* 964 F. 2d 524 (6th Cir. 1992), in support of her argument that her intermittent ability to golf, vacation, shop, and perform household chores does not prove that she was capable of full time work. *Plaintiff's Brief* at 21-23.

### 1. Basic Principles

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally

limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record." C.F.R. 404.1529(c)(3), 416.929(c)(3) lists the factors to be considered in evaluating the making the determination:

> "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

As a general rule, an ALJ's credibility determination is entitled to deference. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *See also Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'").

### 2. "Intermittent" Activity

As previously recognized by the district court (Tr. 369), Plaintiff's subjective complaints in this case should receive heightened consideration in light of the fact that "methods for diagnosing Chronic Fatigue Syndrome are limited." *Reed v. Secretary of Health and Human Services,* 804 F.Supp. 914, 918 (E.D.Mich. 1992). *See also Cohen v. Secretary of Dept. of Health and Human Services,* 964 F.2d 524, 531 (6th Cir.1992). However, although the usual deference allotted to the ALJ's credibility determination is

tempered here by the undisputed presence of CFS, his credibility determination is both procedurally and substantively sound. Consistent with the two part analysis required by SSR 96-7p, the ALJ acknowledged first that Plaintiff experienced CFS (Tr. 13, 19). Next, the ALJ permissibly found that her daily activities daily (completed in September 1998 and February 1999) showed that she continued to drive, cook, maintain her home and yard, read, watch children, and attend sporting events (Tr. 338).

Plaintiff, citing *Cohen v. Secretary of HHS*, *supra,* faults the ALJ for discounting her credibility because she continues to golf. *Plaintiff's Brief* at 21-22. She notes that she has been "reduced" to nine holes of golf once every two weeks. *Id.* However, a close reading of the ALJ's later decision indicates that while he observed that Plaintiff continued to golf, he did not overstate these activities, noting that in June, 1998, Plaintiff told Dr. Conley that fatigue had recently obliged her to discontinue a game at the 15th hole (Tr. 336). I agree with the ALJ that Plaintiff's admission she continued golfing (albeit on a somewhat curtailed basis) undermines her disability claim (Tr. 337).

Plaintiff notes that in *Cohen,* the Sixth Circuit found that the claimant's ability to ballroom dance two days a month and take six credits of law school classes each semester did not imply non-disability. *Plaintiff's Brief* at 21 (*citing* 964 F.2d at 527). Plaintiff argues as such that her ability to golf, travel, shop, and perform housework on an intermittent basis should not be used to discount her credibility. However, the Plaintiff's semi-monthly golf games, along with her other activities, differs in degree from Cohen's ballroom dancing. *Cohen* notes that although Plaintiff was formerly a professional ballroom dancer, her dancing

-14-

had been whittled down to "an occasional Saturday evening, which allowed her to rest beforehand and recover afterwards."   964 F.2d at 530.  Plaintiff also quotes the Sixth Circuit's finding that "level of activity maintained by Cohen since she began suffering from the Chronic Epstein-Bar virus and the associated chronic fatigue syndrome is a tribute to her courage and determination in refusing to surrender to the debilitating effects of her illness," again analogizing Cohen's continued activities to her own ability to play golf, shop, travel, and perform household chores.  *Plaintiff's Brief* at 22-23 (*citing* 964 F.2d at 531).

However, the Court's "courage and determination" reference was to the fact that in 1986, Cohen "founded a national support group for persons suffering from the Epstein-Barr virus" and had for some time continued to encourage others afflicted by the same disease. *Id.* at 530-531.  The Court's holding that Cohen's residual activities should be not used to undermine her allegations of disability appear to be based at least in part on her determination to spend her limited energy helping similarly afflicted individuals.  Citing *Parish v. Califano,* 642 F.2d 188 (6th Cir.1981), the Court noted in regard to Cohen's law school attendance that "[a]ttending college on a part-time basis is not the equivalent of being able to engage in substantial gainful activity." *Cohen,* at 530.

This Court also notes that a diagnosis of CFS (like its close cousin fibromyalgia) does not in and of itself imply disability. *See Potts v. Secretary of Health and Human Services,* 1 F.3d 1241, 1993 WL 303363, *6 (6th Cir. 1993).  Further, although in the case of a CFS diagnosis, both Plaintiff's estimation of her own limitations and her treating physicians' opinions take on heightened significance, the ALJ is conversely permitted use of this material

to find the absence of disability. "While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis." *Boardman v. Prudential Ins. Co. of America,* 337 F.3d 9, 17 (1st Cir. 2003). The ALJ pointed out that although Plaintiff attributed her need to quit work in part to the fact that memory problems caused her to forget the names of her students, consultive testing notes show that she demonstrated unimpaired short term memory skills, noting further that Plaintiff participated in a stock club (Tr. 337, 338). Plaintiff's own admissions to consulting sources also support the ALJ's credibility determination. The ALJ noted that Plaintiff told Dr. Lukens that Ultram relieved her lower limb, arm, and hand pain (Tr. 337). The ALJ also made the reasonable finding that a GAF of 80 stood at odds with her allegation that depression prevented her from working (Tr. 337).

### 3. Drs. Clary and Conley[5]

---

[5]

As discussed above, on March 12, 2004, the Honorable Gerald E. Rosen remanded the case to the administrative level for further fact-finding on the basis that the ALJ provided insufficient reasons for rejecting Plaintiff's credibility (Tr. 367-369). The district court held in pertinent part that "[ALJ Varga] must explain his reasons for discounting Plaintiff's claimed limitation in her daily activities. Accordingly, the Court remands this case for this essential inquiry." *Young v. CSS*, Case No. 03-70676; Tr. 369.

The district court also commented that the ALJ's conclusion contained an erroneous interpretation of Dr. Conley's finding that Plaintiff could perform low-stress work (Tr. 366, footnote 1). The court noted that the "low-stress" finding should have been placed in the context of the physician's opinion that Plaintiff was not presently capable of full time employment. *Id.* at footnote 1; Tr. 366 *citing to* Tr. 255, 259. Although the Court did not include the analysis of Dr. Conley's opinion as grounds for remand, ALJ Varga's 2005 decision elaborated on his previous reasons for rejecting a portion of Conley's findings. (*Compare* Tr. 16 *with* Tr. 336-337). He noted that the physician's own treating notes show

I also disagree with Plaintiff's contention that the ALJ misinterpreted Dr. Clary's April, 2005 deposition testimony. *Plaintiff's Brief* at 12-13. The ALJ rejected Dr. Clary's finding that Plaintiff's CFS had "been fairly severe" nonstop for ten years, noting that Plaintiff herself testified that she did not experience disabling fatigue until 1997 (Tr. 336). While Plaintiff attempts to reconcile her testimony with that of the treating physician, she acknowledges in effect that she was capable of keeping a full time job while experiencing "fairly severe" symptoms of CFS.

Plaintiff also argues that the ALJ's citation of Dr. Conley's November, 1997 and April, 1998 comments that Plaintiff was "feeling better" is tainted by a misreading of the physician's treating notes. *Plaintiff's Brief* at 15-17 (*citing* Tr. 336, 155, 163). Plaintiff argues that the notes, read in context, indicate that the "feeling better" remark referred to her condition following a dizzy spell brought about by unsuccessful attempts to insert an I.V. Even assuming that the "feeling better" did not refer to her overall condition as a result of CFS, the ALJ permissibly noted that Dr. Conley's April, 2008 treating notes indicate that Plaintiff was "feeling better," notwithstanding the fact that she experienced fatigue on the

---

that Plaintiff's acknowledged activities (including golf, travel, membership in a stock club, and socializing) stood at odds with her allegations of total disability (Tr. 336). The ALJ also found that the same disability opinion, undated, was contradicted by June 1998 test results showing that Plaintiff could perform "light physical activity" (Tr. 209). Pursuant to *Wilson v. Commissioner of Social Security,* 378 F. 3d 541, 544 (6th Cir. 2004), the ALJ was entitled to reject the portion of Dr. Conley's findings that were inconsistent with the record as a whole.

day of her examination (Tr. 149). Further, material elsewhere in the treating records provide ample reasons for rejecting her allegations of disability. Plaintiff told her care providers that after ceasing work as a school teacher, she continued to travel, play golf regularly, attend shows, and perform yard work (Tr. 146, 164, 165).

In closing, I note that the ALJ's July 2005 supplemental opinion includes two single-spaced pages discussing the reasons for rejecting Plaintiff's allegations and the disability pronouncements of her treating sources. In the face of substantial evidence supporting the ALJ's determination, pursuant to *Mullen v. Bowen*, *supra*, the administrative finding, well within the "zone of choice" accorded the administrative fact-finder, should remain undisturbed.

## **CONCLUSION**

For the above reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: September 18, 2009

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 18, 2009.

S/G. Wilson<br>
Judicial Assistant

-19-